ORAL ARGUMENT NOT YET SCHEDULED

No. 24-5158

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

TALISHA ROSEN-KELLOGG,

Appellant,

v.

KRISTI NOEM,
Secretary of Homeland Security,
Appellee.

_____

On Appeal from the United States
District Court for the District of Columbia

_____

### BRIEF FOR APPELLEE

_____

EDWARD R. MARTIN, JR.
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

BRENDA GONZÁLEZ HOROWITZ
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2512

Civ. A. No. 22-3028          _Attorneys for the United States of America_

# CERTIFICATE AS TO
## PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**Parties and Amici.** The plaintiff-appellant is Talisha Rosen-Kellogg. The defendant-appellee is Kristi Noem, Secretary of the Department of Homeland Security, who has been automatically substituted as a party pursuant to Federal Rule of Appellate Procedure 43(c)(2). There is no amicus curiae.

**Ruling Under Review.** At issue in this appeal is the September 9, 2023, order, as well as the November 15, 2023, memorandum opinion and order by Judge Reggie B. Walton granting the defendant's motion to dismiss in part. Also at issue is the April 4, 2024, memorandum opinion and order granting the remainder of defendant's motion to dismiss and denying the plaintiff leave to file an amended complaint, and the June 6, 2024, memorandum opinion and order denying the plaintiff's motion to alter or amend the judgment. The November 15, 2023, opinion is available in the joint appendix (JA97) and on Westlaw, 2023 WL 7697043. The April 4, 2024, opinion is available in the joint appendix (JA217), and on Westlaw, 2024 WL 2967404. The June 6, 2024, opinion

is available in the joint appendix (JA292), and on Westlaw, 2024 WL 2967430.

**Related Cases.** This case has not previously been before this Court. Undersigned counsel is unaware of any pending related cases.

# TABLE OF CONTENTS

**Heading**                                                                      **Page**

Certificate as to Parties, Rulings, and Related Cases ............................i

Table of Contents ...................................................................... iii

Table of Authorities.................................................................... v

Glossary ................................................................................ x

Jurisdictional Statement.............................................................. 1

Statutes and Regulations............................................................. 1

Statement of Issues ................................................................... 1

Counterstatement of the Case ....................................................... 3

I.    Rosen-Kellogg's Employment with USCIS ................................... 3

      A.    Rosen-Kellogg's Protected Activity ........................................ 5

      B.    Rosen-Kellogg's Personal Activities on Government Time .... 6

      C.    Rosen-Kellogg's Termination from USCIS ............................ 8

      D.    Rosen-Kellogg's Claims ................................................... 9

II.   District Court Proceedings............................................... 10

Summary of the Argument ....................................................... 19

Standard of Review ................................................................. 22

Argument............................................................................... 22

I.    The District Court Properly Granted USCIS's Motion to Dismiss.
      ..................................................................................22

A.   Rosen-Kellogg Failed to Plead Sufficient Facts to Plausibly Allege that USCIS Failed to Accommodate Her Disability. 22

B.   Rosen-Kellogg Failed to Allege that USCIS Discriminated Against Her on Account of Her Disability. ............................ 31

C.   Rosen-Kellogg Failed to Plausibly Allege USCIS Retaliated Against Her. ........................................................................ 39

II.   The District Court Acted Within Its Discretion in Denying Rosen-Kellogg's Request Raised Via Footnote to Amend Her Complaint. ................................................................................................... 46

A.   Rosen-Kellogg Failed to Move for Leave to Amend Her Complaint. ..................................................................... 46

B.   Rosen-Kellogg's Amendments Would Have Been Futile. ..... 51

III.   The District Court Acted Within Its Discretion in Denying Rosen-Kellogg's Motion to Alter or Amend the Judgment When Rosen-Kellogg Raised New Arguments and Failed to Demonstrate the Need to Prevent a Manifest Injustice. ........................................... 56

Conclusion ........................................................................... 61

Certificate of Compliance ...................................................... 62

Certificate of Service ............................................................ 62

Statutory and Regulatory Addendum ..................................... A

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdullah v. Obama,*
753 F.3d 193 (D.C. Cir. 2014) ............................................................ 37

*Aka v. Wash. Hosp. Ctr.,*
156 F.3d 1284 (D.C. Cir. 1998) ......................................................... 56

*Ali v. Regan,*
111 F.4th 1264 (D.C. Cir. 2024) ....................................................... 56

*Allen v. Johnson,*
795 F.3d 34 (D.C. Cir. 2015) ............................................................. 33

*Al-Tamimi v. Adelson,*
916 F.3d 1 (D.C. Cir. 2019) .............................................. 32, 38, 40, 60

*Am. Council of the Blind v. Paulson,*
525 F.3d 1256 ...................................................................................... 24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .............................................. 23, 28, 34, 36, 39, 42

*Belizan v. Hershon,*
434 F.3d 579 (D.C. Cir. 2006) ........................................................... 47

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................... 23, 31

*Browning v. Clinton,*
292 F.3d 235 (D.C. Cir. 2002) ........................................................... 30

*Chambers v. District of Columbia,*
35 F.4th 870 (D.C. Cir. 2022) .............................................. 23, 35, 36

*Clark Cnty. Sch. Dist. v. Breeden,*
532 U.S. 268 (2001) ............................................................................ 43

*Derrington–Bey v. Dist. of Colum. Dep't of, Corrs.,*
    39 F.3d 1224 (D.C. Cir. 1994) ............................................................56

*District of Columbia v. Doe,*
    611 F.3d 888 (D.C. Cir. 2010) ............................................................58

*Exxon Shipping v. Baker,*
    554 U.S. 471 (2008) ............................................................................58

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1998) ....................................................................36, 37

*Firestone v. Firestone,*
    76 F.3d 1205 (D.C. Cir. 1996) ............................................................57

*Foman v. Davis,*
    371 U.S. 178 (1962) ............................................................................51

*Gilbert v. Napolitano,*
    670 F.3d 258 (D.C. Cir. 2012) ............................................................45

*Givens v. Bowser,*
    111 F.4th 117 (D.C. Cir. 2024)............................................................51

*Hamilton v. Geithner,*
    666 F.3d 1344 (D.C. Cir. 2012) ....................................................43, 45

*Henthorn v. Dep't of Navy,*
    29 F.3d 682 (D.C. Cir. 1994) ..................................................38, 41, 42

*Herron v. Fannie Mae,*
    861 F.3d 160 (D.C. Cir. 2017) ............................................................32

*Hill v. Assocs. for Renewal in Ed.,*
    897 F.3d 232 (D.C. Cir. 2018) ............................................................55

*Ho v. Garland,*
    106 F.4th 47 (D.C. Cir. 2024)......................................................23, 39

*Holbrook v. Reno,*
    196 F.3d 255 (D.C. Cir. 1999) ............................................................33

*Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*,
  737 F.3d 767 (D.C. Cir. 2013) ............................................................... 39

*Hutchins v. District of Columbia*,
  188 F.3d 531 (D.C. Cir. 1999) .............................................................. 47

*Islamic Am. Relief Agency v. Gonzales*,
  477 F.3d 728 (D.C. Cir. 2007) ....................................................... 27, 28

*Jones v. Kirchner*,
  835 F.3d 74 (D.C. Cir. 2016) .......................................................... 52, 55

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ............................................................... 3

*Leidos, Inc. v. Hellenic Republic*,
  881 F.3d 213 (D.C. Cir. 2018) ....................................................... 57, 59

*Mem'l Ass'n, Inc. v. Hines*,
  995 F.2d 295 (D.C. Cir. 1993) ....................................................... 48, 49

*Menoken v. Dhillon*,
  975 F.3d 1 (D.C. Cir. 2020) ................................................................. 22

*Mitchell v. Baldrige*,
  759 F.2d 80 (D.C. Cir. 1985) ............................................................... 42

*Morrissey v. Mayorkas*,
  17 F.4th 1150 (D.C. Cir. 2021) ........................................................... 47

*Muldrow v. City of St. Louis, Missouri*,
  601 U.S. 346 (2024) .............................................................. 20, 32, 35

*Nuzum v. Ozark Auto. Distribs., Inc.*,
  432 F.3d 839 (8th Cir. 2005) .............................................................. 55

*O'Neal v. Ferguson Constr. Co.*,
  237 F.3d 1248 (10th Cir. 2001) .......................................................... 43

*Patton Boggs LLP v. Chevron Corp.*,
  683 F.3d 397 (D.C. Cir. 2012) ........................................................... 58

*Payne v. Salazar,*
    619 F.3d 56 (D.C. Cir. 2010) ............................................................. 22

*Pueschel v. Chao,*
    955 F.3d 163 (D.C. Cir. 2020) .............................................. 39, 43, 45

*Rollins v. Wackenhut Servs., Inc.,*
    703 F.3d 122 (D.C. Cir. 2012) .............................................. 47, 48, 49

*Schmidt v. United States,*
    749 F.3d 1064 (D.C. Cir. 2014) ............................................ 48, 49, 50

*Schneider v. Kissinger,*
    412 F.3d 190 (D.C. Cir. 2005) ........................................................... 60

*Singletary v. District of Columbia,*
    351 F.3d 519 (D.C. Cir. 2003) ........................................................... 60

*Solomon v. Vilsack,*
    763 F.3d 1 (D.C. Cir. 2014) .............................................................. 23

*Spence v. Dep't of Veterans,*
    *Affs.,* 109 F.4th 531 (D.C. Cir. 2024) ................................................ 27

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
    985 F.3d 1032 (D.C. Cir. 2021) ........................................................ 47

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) ......................................................................... 30

*Tyson v. DeJoy,*
    No. 21-5191, 2022 WL 298945 (D.C. Cir. Jan. 20, 2022) .................. 28

*Vickers v. Powell,*
    493 F.3d 186 (D.C. Cir. 2007) ........................................................... 45

*Wheeler v. Georgetown Univ. Hosp.,*
    812 F.3d 1109 (D.C. Cir. 2016) ........................................................ 33

*Woodruff v. Peters,*
    482 F.3d 521 (D.C. Cir. 2007) .................................................... 23, 24

*Xia v. Tillerson,*
    865 F.3d 643 (D.C. Cir. 2017) ........................................................... 22

## Statutes

28 U.S.C. § 1291 ........................................................................... 1

28 U.S.C. § 1331 ........................................................................... 1

29 U.S. Code § 791(f) .................................................................. 36

42 U.S.C. § 2000e ........................................................................ 35

42 U.S.C. § 2000e-5(f)(3) ............................................................. 1

42 U.S.C. § 12112(a) .................................................................... 36

## Rules

Fed. R. App. P. 4(a)(1)(B) ............................................................ 1

Fed. R. App. P. 32(a)(7)(B) ........................................................ 62

Federal Rule of Civil Procedure 59(e) ....................................... 56

## Regulations

29 C.F.R. § 1630.2(m) .................................................................. C

29 C.F.R. § 1630.2(n)(3) ..................................................... 24, 25, D

29 CFR § 1630.2 ........................................................................... B

# GLOSSARY

ADA…………………………..Americans with Disabilities Act

EEO ................................Equal Employment Opportunity

EEOC………………………Equal Employment Opportunity Commission

USCIS..............................U.S. Citizenship and Immigration Services

JA......................................Joint Appendix

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). The plaintiff timely appealed the District Court's final order denying plaintiff's motion to alter or amend the judgment. *See* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in an addendum attached hereto.

## STATEMENT OF ISSUES

In the opinion of the United States, the questions presented are:

1.    Whether the operative complaint pleaded facts plausibly showing that the removal of a government-issued cell phone violated the Rehabilitation Act when Rosen-Kellogg did not plausibly allege that a cell phone was necessary to perform the essential functions of her job and stated only in conclusory fashion that the cell phone was a reasonable accommodation.

2.    Whether the operative complaint pleaded facts plausibly showing that Rosen-Kellogg was discriminated and retaliated against for prior protected activity.

3.    Whether the operative complaint sufficiently alleged an adverse action, i.e., "some harm" to a term or condition of employment, as necessary for Rosen-Kellogg's discrete discrimination claims when she alleged that her management used Skype to supervise her work while she worked remotely and when colleagues purportedly "gossiped" about her.

4.    Whether the District Court correctly concluded that Rosen-Kellogg failed to plausibly allege a causal connection between her protected activity and an investigation into Rosen-Kellogg's misconduct and her ultimate termination.

5.    Whether the District Court acted within its discretion in denying Rosen-Kellogg's request to amend her complaint when the request was made in a footnote in an opposition to a motion to dismiss rather than a motion and when Rosen-Kellogg attempted to introduce purported facts not previously alleged (but known to her).

6.    Whether the District Court erred in denying Rosen-Kellogg's request to amend her complaint when the amendments would have been futile.

7.    Whether the District Court acted within its discretion in denying Rosen-Kellogg's motion to alter or amend the judgment when Rosen-Kellogg failed to address the relevant standard, raised new arguments for the first time that she could have raised before dismissal, and failed to demonstrate that amending the judgment was necessary to correct a clear error or prevent a manifest injustice.

## COUNTERSTATEMENT OF THE CASE

Because the District Court resolved this case at the pleading stage, this statement is based on the allegations in the complaint accepted as true (though not admitted), *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1273 (D.C. Cir. 1994).

## I.    <u>Rosen-Kellogg's Employment with USCIS</u>

During the relevant period, Rosen-Kellogg was employed as a GS-14 Management and Program Analyst with the Financial Management Branch of the Mission Support Division at U.S. Citizenship and Immigration Services. Am. Compl. (R.2) ¶¶ 5, 8, JA20-21. Between 2017 and 2020, Rosen-Kellogg reported to various supervisors: Fabienne Corcoran (March 2016 to March 2017), Jared Epenschied (April 2018 to December 2019), Kalika France and Stefen Deseo (December 2019 to May

2020) and Marlin Ruhl (from mid-May 2020 until her termination in December 2021). *Id*. ¶ 11, JA22. From March 2017 until February 2020, Rosen-Kellogg's second-level supervisor was Corcoran, Chief of the Mission Support Division. Her third-level supervisor from July 2019 until her termination in December 2021 was Jessica McAllum, Chief of Staff of the Fraud Detection and National Security Directorate. *Id*.

At some point during her employment, Rosen-Kellogg, who had suffered significant physical and mental injuries during her prior tenure as a commissioned officer of the Coast Guard (*id*. ¶ 7), was granted a reasonable accommodation to work remotely from home. *Id*. ¶ 13. Rosen-Kellogg does not specify in her amended complaint when she was granted this accommodation or who granted it.[1] Rosen-Kellogg also alleged that the agency had given her a cell phone. *Id*. ¶¶ 19, 20. Rosen-Kellogg's

---

[1]    Rosen-Kellogg later supplied these facts in her opposition to Defendant's motion to dismiss, but they are not found in her pleading or appropriately raised through a motion for leave to file an amended complaint. She contends that the reasonable accommodation to work remotely was provided in 2016 by Brenda Coffren. Opp. Mot. Dismiss (R.8) at 4, JA61.

complaint does not indicate when the cell phone was provided to her or who authorized it. *See generally* Am. Compl.[2]

## A.    Rosen-Kellogg's Protected Activity

Rosen-Kellogg identified three specific instances of protected activity that she undertook during her employment with USCIS: a formal EEO complaint filed on March 24, 2020 (Am. Compl. (R.2) ¶ 4, JA19-20), a second formal complaint filed sometime after her termination in December 2021 (*id*.) and testifying on behalf of a colleague in an administrative EEO investigation sometime in 2018 (*id*. ¶ 10). Though Rosen-Kellogg did not specify the dates, she also alleged that she complained "to her supervisor" that the agency was using Skype as an attendance tool for her as a disabled person working from home "between April 2018 and February 2020." *Id*. Rosen-Kellogg did not specify the dates on which she made these complaints or to whom. *Id*.

Rosen-Kellogg's management deny that she was provided a cell phone as part of a reasonable accommodation. Final Agency Decision (R.14-1) at 4, JA142; Report of Investigation (R.14-4) at 13, JA182.

---

[2]    Rosen-Kellogg later alleged that the cell phone was provided to her to "facilitate her working from home" following her reasonable accommodation of full-time telework. Opp. Mot. Dismiss (R.8) at 5, JA62.

Rosen-Kellogg initially did not want the cell phone, which was provided to her as a courtesy when she began teleworking the majority of the time. *Id.*

In December 2019, Jessica McAllum made the decision to recall over fifty cell phones from the Fraud Detection and National Security Directorate headquarters employees, including Rosen-Kellogg as a cost-saving measure to the agency due to a critical financial situation. *Id.*; *see also* Final Agency Decision (R.14-1) at 3, JA141.

## B. Rosen-Kellogg's Personal Activities on Government Time

While working as a Management and Program Analyst, Rosen-Kellogg also maintained a real-estate business outside of her employment with USCIS. Am. Compl. ¶ 15 (R.2), JA24. She maintained a real estate agent's license (*id.*) and bought and sold property for herself, her family, and her friends. *Id.* In addition to her primary residence, Rosen-Kellogg also maintained a second home (*id.*), from which she sometimes worked remotely, though there is no plausible allegation that USCIS approved Rosen-Kellogg to work from such a location either through an approved telework agreement or her reasonable accommodation. *Id.* ¶ 16, JA25.

While maintaining a real-estate agent's business, Rosen-Kellogg utilized her government-owned equipment to engage in her personal affairs. For example, Rosen-Kellogg acknowledges that she used her government-issued computer to keep personal records, as well as her government-issued mobile phone to make personal calls, including calls relating to her real-estate transactions. Am. Compl. ¶ 14 (R.2), JA24.

On February 14, 2019, Rosen-Kellogg and her then-supervisor, Jared Epenschied, discussed her real-estate activities after Epenscheid received complaints from coworkers regarding Rosen-Kellogg's apparent discussion of real estate business in the office. Report of Investigation (R.14-2) at 9, JA178. According to Epenschied, Rosen-Kellogg acknowledged having her real-estate agent license but noted that she did not work for any real estate company, providing an explanation that made the complaint by her coworkers regarding her conduct of outside business during government hours appear to be a misunderstanding. *Id.* Epenschied accepted Rosen-Kellogg's explanation at that time. *Id.* On August 20, 2019, Epenschied received requests from Rosen-Kellogg for approval of outside employment at three real-estate companies that she had worked for since 2017, directly contradicting her previous statements

- 7 -

to him in February. *Id.* Although Epenschied recommended disapproval of Rosen-Kellogg's request for permission to engage in outside employment, the Ethics Division approved her requests on August 21, 2019. *Id.* After further consultation with the Ethics Division, Epenschied explicitly instructed Rosen-Kellogg on October 4, 2019, that she could not use her government-owned equipment or government time to conduct any activity relating to outside employment, even if it fell under the limited use exception. *Id.* Epenschied further informed Rosen-Kellogg that she could not conduct any business-related phone calls on government property, even during breaks. *Id.*

Also in October 2019, the Office of Investigations began an investigation into Rose-Kellogg's use of government resources and time to support her personal business. Rep. of Investigation Report of Investigation, (R.14-2) at 9, JA178.

## C.    Rosen-Kellogg's Termination from USCIS

On May 7, 2021, based on the results of the investigation, Marlin Ruhl, Rosen-Kellogg's first line supervisor, proposed to terminate her employment. Am. Compl. ¶ 17 (R.2) at 8, JA25. The proposal was based on several charges: lack of candor, three specifications of failure to obtain

approval before engaging in outside employment or activity; seven specifications of teleworking from an unauthorized location; two specifications of misuse of government-furnished equipment. Final Agency Decision (R.14-1) at 4, JA142.

Rosen-Kellogg requested and received an extension to reply to the proposed removal and on July 20, 2021, submitted a written reply, and provided an oral reply on July 30, 2021. *Id*. at 5, JA143.

On November 30, 2021, McAllum issued Rosen-Kellogg a notice removing her from employment. Am. Compl. ¶ 18 (R.2), JA26. On December 6, 2021, McAllum rescinded her November 30, 2021, notice, but affirmed Rosen-Kellogg's removal from her position effective that same date. *Id*.; *see also* Final Agency Decision (R.14-1) at 5, JA143.

## D.    Rosen-Kellogg's Claims

Rosen-Kellogg filed a formal complaint of discrimination on March 24, 2020, alleging that management discriminated against her on the basis of disability and failed to accommodate her when it removed her government-issued cell phone that she alleged was part of a reasonable accommodation, when USCIS launched an investigation into her personal business activity conducted on government equipment, and that

management was monitoring her personal activities. Am. Compl. ¶ 4 (R.2), JA19-20; Final Agency Decision (R.14-1) at 2-3, JA 140-141. At some point in 2021 or 2022, Rosen-Kellogg filed another complaint of discrimination and retaliation stemming from USCIS's investigation into her real-estate activities that culminated in her termination. *Id.*

## II.  District Court Proceedings

On October 6, 2022, Rosen-Kellogg filed a complaint in the District Court asserting three claims: first, that USCIS violated the Rehabilitation Act when it failed to accommodate her by taking away her government-issued cell phone (Count I) (Compl. ¶ 20 (R.1), JA14); second, that USCIS discriminated against her based on her disability when it mistreated her, allowed her to be the object of "gossip" and used Skype "as a time clock," and proposed and removed her from her employment (Count II) (*id*. ¶ 21, JA14); third, that USCIS retaliated against her by subjecting her to "gossip" and "innuendos" from coworkers, investigated her real-estate activities, and proposed her removal and removed her from federal service (Count III) (*id*. ¶ 22, JA14-15). That same day, the docket notes that an "Amended Complaint," containing the same three clams was filed. *See* Am. Compl. (R.2), JA18-30.

On January 10, 2023, USCIS moved to dismiss Rosen-Kellogg's amended complaint, arguing first that Rosen-Kellogg's failure-to-accommodate claim failed to state a claim upon which relief could be granted; second, that most of Rosen-Kellogg's discrete discrimination and retaliation claims failed to allege adverse actions, third, that the actions that qualified as "adverse" did not occur because of disability discrimination or retaliation, and fourth, that Rosen-Kellogg's retaliation claim failed to plausibly plead a causal connection between her protected activity and management's subsequent actions. Def.'s Mot. Dismiss (R.6), JA31-57.

On February 14, 2023, Rosen-Kellogg opposed USCIS's motion. *See generally* Pl.'s Opp. Mot. (R.8), JA58-75. In her opposition, Rosen-Kellogg asserted new facts taken from the EEO Reports of Investigation into her administrative claims to attempt to bolster the viability of the discrimination and retaliation claims set forth in the amended complaint. *See id.* at 2, JA59. Relying significantly on these new facts in her opposition, Rosen-Kellogg requested, via footnote, that if the District Court "deem[ed] these additional facts need to be included in the complaint," then pursuant to "Federal Rule of Civil Procedure 15(b)(2),

the Plaintiff move [sic] for leave to amend her complaint." Pl.'s Opp. (R.8) at 2 n.1, JA59. Relying on these new facts, Rosen-Kellogg attempted to bolster her claims, asserting that she had previously been given a cell phone as a reasonable accommodation (*id.* at 5-6, JA62-63), that the cell phone was needed for her to perform the essential functions of her position because otherwise she was "forced to engage in email exchanges that were sometimes unproductive" (*id.* at 5-7, JA62-64), that she contacted an EEO counselor shortly before management commenced an investigation into her side business (*id.*) and purporting to identify other employees who were not subject to the same employment restrictions (*id.* at 9-10, JA66-67).

On February 21, 2023, USCIS filed its reply in further support of its motion to dismiss. Def.'s Reply (R.9), JA76-88. USCIS opposed Rosen-Kellogg's attempt to amend her complaint via opposition, noting that Rosen-Kellogg could have filed an amended complaint in response to USCIS's motion, rather than improperly assert new facts in opposition. *Id.* at 2, JA78. USCIS also responded to the remainder of Rosen-Kellogg's arguments, reiterating its initial grounds for dismissal.

On September 29, 2023, the District Court issued an order granting USCIS's motion in part and denying it without prejudice in part.  Sept. 29, 2023, Order (R.10), JA89-90.  The District Court ordered that Counts I and II of the Amended Complaint were dismissed in their entirety (*id.*) and that Count III was dismissed to the extent it alleged retaliation on the basis that Rosen-Kellogg was subjected to gossip and accused of wrongdoing, and as to her proposed and actual termination.  *Id*.  The District Court explained it would issue a forthcoming memorandum opinion explaining its rationale.  *Id*. The District Court denied without prejudice the request for dismissal of part of Count III.  *Id.*

On November 15, 2023, the District Court issued its memorandum opinion explaining its rationale for dismissing Counts I and II and dismissing Count III in part.  Nov. 15, 2023, Mem. Op. (R.12), JA97-128.

As to Count I, the District Court agreed that Rosen-Kellogg failed to adequately plead that she needed a cell phone to perform the essential functions of her position, noting that Rosen-Kellogg did not explain why a cell phone, as opposed to other forms of communication, was needed for her position.  *Id*. at 10-12, JA106-108.  Rather, Rosen-Kellogg identified only employment inconveniences, such as having to exchange emails

versus phone calls and having to log into the agency's system from a computer to change her email settings. *Id.* at 12, JA108.

As to Count II, the disability discrimination claim, the District Court agreed with USCIS's two main arguments: first, Rosen-Kellogg failed to plausibly allege she suffered an adverse action when she alleged that she was the object of gossip and false allegations by her workers, when management "monitored" her employment through Skype, and second, Rosen-Kellogg failed to plead sufficient facts plausibly alleging that she was terminated because of her disability. *Id.* at 17-21, JA113-117.

As to Count III, the District Court dismissed claims that the agency subjected Rosen-Kellogg to retaliation by "unfairly harassing" her, subjecting her to "gossip" by coworkers and managers, "accusing" her of wrongdoing, investigating her real-estate activities, proposing to terminate her, and terminating her employment. Nov. 15, 2023, Mem. Op. (R.12) at 21-24, JA117-120. The District Court held that allegations that she was "harassed," "subjected to gossip," and "accused unfairly of wrongdoing by coworkers" did not rise to the level of a materially adverse action. *Id.* at 24-25, JA120-121.

Regarding Rosen-Kellogg's proposed and actual termination, the District Court found that Rosen-Kellogg failed to plausibly allege a causal connection because there existed too wide a temporal gap between the protected activity and the proposed and final termination. *Id*. at 26, JA122.

Concerning Rosen-Kellogg's claims that management initiated an investigation into her real-estate activities within a month of her contacting an EEO counselor, the District Court noted that Rosen-Kellogg attempted to raise new facts in her opposition that she argued could support an inference of retaliation. *Id*. at 28-29, JA124-25. The District Court concluded, however, that because Rosen-Kellogg, who was represented by counsel, asserted these new facts in her opposition and requested leave to amend her complaint in her brief, the District Court would allow Rosen-Kellogg the opportunity to file a supplemental brief explaining "when [Rosen-Kellogg] became aware of the [Reports of Investigation]" and "any other potentially mitigating reasons for [her] error." *Id*. at 31, JA127. Thus, the District Court stayed its decision on part of Rosen-Kellogg's retaliation claim (Count III) regarding the

investigation into Rosen-Kellogg's activities pending supplemental submissions by the parties. *Id*.; *see also* Order (R.13), JA129-130.

On December 15, 2023, Rosen-Kellogg filed her supplemental brief, acknowledging that she had access to the "320-page Report of Investigation" at the time she filed her complaint and that it was "possible" for counsel to "file a much more detailed complaint." Pl.'s Supp. Mem. (R.14) at 4, JA134.[3] Rosen-Kellogg nevertheless argued that she was complying with Rule 8's "short and plain" statement requirement by omitting factual allegations she was arguing in support of her claims. *Id*. Rosen-Kellogg then "request[ed] leave to file an amended complaint," and provided several bullet points of new facts that she intended to rely on. *Id*. Rosen-Kellogg also appended almost seventy-pages of supporting exhibits from the applicable Report of Investigation and USCIS's Final Agency Decision. *See id.*, JA139-205.

---

[3] There was an ECF error between Rosen-Kellogg's first supplemental filing (R.14) and her second (R.15) because the signature of the attorney on the first filing did not match the PACER login. *See* Dec. 18, 2023, Not. of Error. That error was subsequently corrected, and the same brief was filed again at R.15, but for ease of clarity, Appellee refers to the original submission on December 15, 2023.

On January 5, 2024, USCIS responded to Rosen-Kellogg's supplement, noting that Rosen-Kellogg's decision not to include the relevant facts upon which she later relied did not constitute good cause, and arguing alternatively that Rosen-Kellogg's amendments were futile. Def.'s Supp. Mem. (R.15), JA206-215.

Subsequently, on April 4, 2024, the District Court concluded that Rosen-Kellogg failed to demonstrate good cause for failing to include pertinent information to which Rosen-Kellogg's counsel had access at the time that Rosen-Kellogg filed her complaint. April 4, 2024, Order (R.17) at 5, JA221-22. Similarly, the District Court noted that Rosen-Kellogg could have filed a motion to amend her complaint but failed to do so. *Id*. The District Court concluded that Rosen-Kellogg had been given ample opportunity to amend her complaint, as she had already filed one amended complaint prior to USCIS's motion to dismiss. *Id*. The District Court therefore reinstated USCIS's motion to dismiss the remainder of Count III, dismissed the remaining portion of Count III, and closed the case. *Id*. at 7, JA223.

Rosen-Kellogg subsequently moved the District Court to alter or amend its judgment. Pl.'s Mot. Recon. (R.19), JA224-28. Of the five

pages comprising Rosen-Kellogg's motion, she devoted a single paragraph to substantive argument, and did not address the relevant standard under Rule 59(e). *See id*. at 4, JA227. Rosen-Kellogg argued for the first time that the "amended complaint," was "merely a refiling of the same complaint" that had been filed the same day "nine minutes earlier." *Id*. Rosen-Kellogg argued that she had not been given ample opportunity to amend her complaint, and to "further flesh out" the basis for her retaliation claims in Count III and to bolster the other dismissed claims, Rosen-Kellogg appended a proposed amended complaint. *Id*.

USCIS opposed Rosen-Kellogg's motion, arguing that the District Court should not consider new arguments made for the first time, that she failed to demonstrate extraordinary circumstances that would warrant altering or amending the judgment, and alternatively that the proposed amended complaint was futile. Def.'s Opp. (R.21), JA261-277. For the first time on reply, Rosen-Kellogg addressed the applicable legal standard, arguing that the motion should be granted to "correct a clear error," and to "avoid a manifest injustice." Pl.'s Reply (R.22) at 4, JA282. In support of her arguments, Rosen-Kellogg pointed to facts included in her proposed amended complaint. *Id*.

The District Court subsequently denied Rosen-Kellogg's motion, finding that neither of her bases for reconsideration were persuasive. Namely, the District Court concluded that Rosen-Kellogg had attempted to amend her complaint via a footnote in an opposition rather than appropriately by motion under Rule 15, and that Rosen-Kellogg had previously failed to bring to the District Court's attention the docketing error regarding her complaint. June 6, 2024, Order (R.23), JA292-94.

This appeal timely followed.

## SUMMARY OF THE ARGUMENT

1.     Rosen-Kellogg fails to plausibly allege that she was denied a reasonable accommodation in the form of a cell phone when she failed to plead facts that a cell phone was necessary for her to perform the essential functions of her position or otherwise plead any facts regarding the duties of her position. Rosen-Kellogg's complaint contained no allegation regarding when she was purportedly given a cell phone as part of a reasonable accommodation, or why a cell phone, as opposed to other forms of communication, such as Skype or other messaging platforms, was necessary.

2.    Rosen-Kellogg fails to plausibly allege that USCIS discriminated against her based on her disability when her supervisors used Skype to "monitor" her attendance, because such an allegation fails to constitute an adverse action sufficient to state a claim.  Even if this allegation did constitute an adverse action, Rosen-Kellogg failed to allege that these acts caused her "some harm," pursuant to *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024).  Further, aside from conclusory statements, Rosen-Kellogg failed to plausibly allege that USCIS monitored her with Skype because of her disability.

3.    Rosen-Kellogg failed to plausibly allege that USCIS proposed and terminated her employment because of her disability.  Rosen-Kellogg acknowledges that she maintained a real-estate business and her real-estate agent's license, that she conducted her business during the day while working in her position as a Management Analyst, and that she sometimes used her government-issued computer and cell phone to conduct this business.  Rosen-Kellogg's complaint failed to raise an inference of discrimination where she failed to point to comparators or similarly situated employees, instead alleging only that her managers were aware of her disability.

5.    Rosen-Kellogg failed to plausibly allege that she was retaliated against when USCIS proposed and actually terminated her employment. Her complaint in the District Court did not create an inference of a causal connection through temporal proximity, as the protected activity that Rosen-Kellogg identified was too far removed in time from her proposed and actual termination in 2021. And Rosen-Kellogg fails to plausibly allege that her managers were aware of her protected activity when they opened an investigation into her activities.

6.    The District Court did not abuse its discretion in denying Rosen-Kellogg's request to amend her complaint when she requested permission via footnote in her opposition to USCIS's motion to dismiss. Rather than amending her complaint pursuant to Rule 15, Rosen-Kellogg, who was represented by counsel, chose to oppose USCIS's motion and raised new facts not previously pleaded in her opposition. The District Court did not err when it chose not to credit Rosen-Kellogg's new allegations. In any event, the amendment with the new allegations would have been futile.

7.    The District Court did not abuse its discretion in denying Rosen-Kellogg's motion to alter or amend the judgment when she raised

an argument for the first time and did not explain why the District Court's decision dismissing her complaint in full would be manifestly unjust.

## STANDARD OF REVIEW

This Court reviews the District Court's grant of defendant's motion to dismiss under Rule 12(b)(6) for failure to statute a claim de novo. *Payne v. Salazar*, 619 F.3d 56, 59 (D.C. Cir. 2010). This Court reviews the District Court's denial of leave to amend the Complaint for abuse of discretion except denials based on futility are reviewed de novo. *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017). This Court reviews the denial of a motion under Rule 59(e) for abuse of discretion. *Menoken v. Dhillon*, 975 F.3d 1, 5 (D.C. Cir. 2020).

## ARGUMENT

### I. The District Court Properly Granted USCIS's Motion to Dismiss.

#### A. Rosen-Kellogg Failed to Plead Sufficient Facts to Plausibly Allege that USCIS Failed to Accommodate Her Disability.

Rosen-Kellogg recognizes that to overcome a motion to dismiss, a Title VII plaintiff, like any other, must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) ("If a Title VII plaintiff fails to plead 'sufficient factual matter' to state a claim of discrimination that is 'plausible on its face,' then the district court should dismiss the case before discovery.") (quoting *Iqbal*, 556 U.S. at 678). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Applying the pleading standard set forth in *Twombly* and *Iqbal*, a plaintiff bringing a failure-to-accommodate claim must allege sufficient facts to demonstrate: (1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of the disability; (3) that with reasonable accommodation the employee could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007); *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014).

The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Woodruff*, 482 F.3d at 527 (citing 42 U.S.C. § 12111(8)). A "reasonable accommodation" includes modifications to the way a position is performed "that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). Thus, an essential element of Rosen-Kellogg's failure-to-accommodate claim based on the removal of her government-issued cell phone is that she required the cell phone to perform the essential functions of her position. Yet she pleaded that element in only a perfunctory way, without the necessary factual support. *See* Am. Compl. ¶ 9 (R.2), JA22 ("[W]ith reasonable accommodations, plaintiff performed the essential duties of her position[.]").

What constitutes an "essential function" is governed by the Equal Employment Opportunity Commission's ("EEOC") regulations pertaining to the Americans with Disabilities Act ("ADA"), which apply in turn to the Rehabilitation Act's provisions. *See* 29 C.F.R. § 1630.2(n)(3); *see also Am. Council of the Blind v. Paulson*, 525

F.3d 1256, 1260 n. 2 (D.C. Cir. 2008) ("cases interpreting either [statute] are applicable and interchangeable").  Federal regulations provide that "evidence of whether a particular function is essential includes, but is not limited to: [t]he employer's judgment as to which functions are essential; (ii) [w]ritten job descriptions prepared before advertising or interviewing applicants for the job; (iii) [t]he amount of time spent on the job performing the function; (iv) [t]he consequences of not requiring the incumbent to perform the function; (v) [t]he terms of a collective bargaining agreement; (vi) [t]he work experience of past incumbents in the job; and/or (vii) [t]he current work experience of incumbents in similar jobs.  29 C.F.R. § 1630.2(n)(3). Rosen-Kellogg's complaint did not address any of these factors.  *See* Nov. 15, 2023, Mem. Op. (R.12) at 10, JA106-7.  Instead, Rosen-Kellogg conceded that she "occasionally used her agency-provide[d] mobile phone to make personal calls, including calls related to her real estate transactions[,]" and that "her management had her investigated on allegations that she was . . . engaged in a private real estate business as a broker, used government equipment (i.e., her government issued computer and mobile phone) for that real estate brokerage business, and that she engaged in business while on

government time." Am. Compl. ¶ 13-14 (R.2), JA23-24. But undisputedly tasks relating to Rosen-Kellogg's side business were not part of the "essential functions" of her position with USCIS. The District Court therefore did not err in finding that Rosen-Kellogg failed to plead essential elements of her failure-to-accommodate claim. Nov. 15, 2023, Mem. Op. (R.12) at 13, JA109.

Contrary to her arguments, Rosen-Kellogg pleaded only in a conclusory fashion that she had received a cell phone as a reasonable accommodation. Am. Compl. ¶ 12 (R.2) at 6, JA23. Her amended complaint contained no explanation or detail as to when the accommodation was provided to her, who provided it to her, or the contours of her accommodation. Elsewhere in the complaint, Rosen-Kellogg alleged that she had been granted the ability to work remotely full time, but that allegation also contained no other details regarding the nature of the reasonable accommodation. Am. Compl. ¶ 13 (R.2) at 7, JA24. Rosen-Kellogg's brief similarly contains no such explanation. *See* Appellant's Br. at 20 ("She alleges that when appellee took away the cell phone that had previously been provided to her as an accommodation for her disabilities, it took away a tool that she needed to perform her

duties.").  In pressing this argument, Rosen-Kellogg does not cite to a single paragraph from her pleading, nor does she provide any factual matter to support her argument.  Allowing an inference that Rosen-Kellogg needed the cell phone to perform her duties, when she has not explained what her duties were or why the cell phone was necessary in performing them, would have required the District Court to make an inference unsupported by any allegation of fact, an approach this Court has rejected.  *See, e.g., Spence v. Dep't of Veterans Affs.*, 109 F.4th 531, 540 (D.C. Cir. 2024) ("[W]e do not "accept inferences that are unsupported by the facts set out in the complaint.") (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

Rosen-Kellogg's pleading contained no facts to support a finding that her purported request for a cell phone was reasonable considering her disabilities, or that a cell phone was necessary to perform the essential functions of her job.  For example, Rosen-Kellogg did not plead why a cell phone would be a preferred accommodation over other types of communication tools (e.g., Skype, Webex, Zoom, Teams, or the like).  Am. Compl. ¶¶ 12-14 (R.2) at 6-7, JA 23-24.  Similarly, the complaint lacked any allegation as to why a cell phone would be a reasonable or necessary

alternative to any other communication tool or why it would be needed based on her limitations. *Id*. Rosen-Kellogg alleged that she is prone to "misunderstandings" Am. Compl. ¶ 9 (R.2) at 5, JA 22, but there is no logical explanation as to why she would be less likely to be misunderstood by her colleagues if she were using a government-issued cell phone, as opposed to any other means of communication. Absent these types of supporting facts, Rosen-Kellogg's claims do not move from the realm of possible to plausible. *See e.g., Tyson v. DeJoy*, No. 21-5191, 2022 WL 298945, at *1 (D.C. Cir. Jan. 20, 2022) (summarily affirming the District Court's dismissal of a Rehabilitation Act claim where the "allegations in the complaint are conclusory and lacked specific facts" connecting the alleged event to plaintiff's disability) (citing *Iqbal*, 556 U.S. at 678); *Iqbal*, 556 U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Rosen-Kellogg argues that she made the "obvious contention" that because she worked at home "she needed a cell phone to perform her duties." Appellant's Br. at 22. But that is not the measure of compliance with *Twombly* and *Iqbal's* pleading standard, nor does it provide a non-

conclusory, well-pleaded allegation as to why the cell phone was a necessary requirement for Rosen-Kellogg's "essential functions." Even allowing Rosen-Kellogg the most generous reading of her complaint, she failed to allege any facts about her essential functions, such as what her duties entail, her role in her organization, or any other supporting facts regarding her position. Rather, she made only a passing statement that she worked as a Program Analyst with the Financial Management Branch. Am. Compl. (R.2) ¶¶ 5-8, JA7-8. That does not suffice.

Nor did Rosen-Kellogg explain how a cell phone relates to her disability. Rosen-Kellogg alleged that she suffered from degenerative disc disease, major depressive disorder and anxiety, migraines, post-traumatic stress disorder, panic attacks, and depression. Am. Compl. (R.2) ¶ 9, JA22. But none of those disabilities, even accepting Rosen-Kellogg's well-pleaded allegations as true, demonstrate a need to use a cell phone to perform Rosen-Kellogg's essential functions, particularly when she was already working remotely. If the Court were to accept such a broad reading of the Rehabilitation Act, there would be no need to compare the essential functions of an employee's position to a requested accommodation, thereby rendering the applicable regulations and legal

standards without effect. Considering Rosen-Kellogg's facts when taken together, they did not provide defendant with "fair notice" of her claims or "the grounds upon which it rest." *Browning v. Clinton*, 292 F.3d 235, 243 (D.C. Cir. 2002). Nor do they support Rosen-Kellogg's legal theory that USCIS failed to engage in the interactive process when USCIS "stripp[ed]" her of her mobile phone," an assertion Rosen-Kellogg makes summarily without providing any supporting facts regarding USCIS's purported refusal. Am. Compl. ¶ 12 (R.2), JA24.

Rosen-Kellogg also asserts that her pleading complied with Rule 8(a) "short and plain statement" requirement. Appellant's Br. at 19. But that argument misapprehends the relationship between a "short and plain statement" of the case and Rosen-Kellogg's burden to set forth more than conclusory allegations and threadbare recitals of a cause of action. Rosen-Kellogg attempts to escape her obligation to plead sufficient factual support for her claims (Appellant's Br. at 21-22) by arguing that not every Title VII complaint neither needs to allege anticipatory legitimate non-discriminatory reasons nor allege pretext. *See id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). This argument is misguided because the question is whether the accommodation is

reasonable and necessary, and whether Rosen-Kellogg has plausibly alleged sufficient facts to support her claims. She did not.

Further, the Supreme Court has made clear that *Swierkiewicz* only rejected a "heightened pleading standard" requiring plaintiffs to "allege certain additional facts that [they] would need at the trial stage to support [a] claim in the absence of direct evidence of discrimination." *Twombly*, 550 U.S. at 570 (emphasis added). *Swierkiewicz* thus does not relieve plaintiffs of their obligation to allege facts "necessary to state [a] claim and the grounds showing entitlement to relief," *id*., including facts, direct or circumstantial, that plausibly allege that Rosen-Kellogg needed the use of a cell phone to perform the essential functions of her position or that USCIS provided it to her as part of a reasonable accommodation in the first instance.

## B. Rosen-Kellogg Failed to Allege that USCIS Discriminated Against Her on Account of Her Disability.

Rosen-Kellogg alleged that USCIS discriminated against her when it "mistreat[ed] [her] on the job," by "unfairly allowing her to be the object of gossip and false allegations of misconduct by coworkers"; "use[d] Skype as a time clock for plaintiff as a disabled employee working remotely";

"proposed to fire plaintiff and remove her from federal service [] and otherwise mistreat[ed] and bull[ied] plaintiff"; and "ultimately fir[ed] her from her GS-14 position and remov[ed] her from the federal service in December 2021." Am. Compl. ¶ 21 (R.2) at 10, JA27. Rosen-Kellogg now addresses only the contention that management used "Skype" as a monitoring tool. *See* Appellant's Br. at 25 (failing to address and thereby forfeiting most of her discrimination claims). As to her contention that USCIS used Skype to monitor her employment because of her disability, Rosen-Kellogg fails to demonstrate that she suffered "some harm" as a result. *Muldrow*, 601 U.S. at 347.

To begin, Rosen-Kellogg does not address the District Court's decision to dismiss her claims for failure to plausibly allege an adverse action, thereby forfeiting the argument. Appellant's Br. at 24-25. *Herron v. Fannie Mae*, 861 F.3d 160, 165 (D.C. Cir. 2017) (a party forfeits an argument by failing to raise it in their opening brief); *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (same). Instead, Rosen-Kellogg argues that the Court can draw an inference of discrimination regarding her allegation that management "monitored" her activities through

Skype because it did not do so for "fifteen" other employees. Appellant's Br. at 25. Rosen-Kellogg is incorrect.

Though Rosen-Kellogg now attempts to rely on comparators to support her theory (*id.*), her complaint made no mention of any purported comparators. *See generally* Am. Compl. (R.2), JA18-30. Rosen-Kellogg's pleading described no other employees for whom "all the relevant aspects" of their employment were "nearly identical" to that of Rosen-Kellogg. *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115-16 (D.C. Cir. 2016), and failed to identify how or why other individuals in her office were treated differently. *See* Mot. Dismiss (R.6) at 14-15, JA50-51. Indeed, Rosen-Kellogg's complaint acknowledges that she was working remotely but makes no mention of other employees who also were approved to work remotely that were not similarly monitored. In the absence of such allegations, Rosen-Kellogg's vague claims of "other" employees are not plausible. *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015) (noting that one way to prove "invidious motive" includes pointing to evidence that the employer treated other, similarly situated employees, better[.]"); *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (to establish a prima facie case of discrimination, a plaintiff must

demonstrate, among other things, that she was "similarly situated to an employee who was not a member of the protected class" and that she and "the similarly situated person were treated disparately"). Such threadbare speculation about the possibility of valid comparators fails to plausibly show discriminatory action. *Iqbal*, 556 U.S. 678.

While Rosen-Kellogg raised an argument regarding other employees in her opposition to USCIS's motion to dismiss, it was not found within the four-corners of her pleading, or the materials referenced therein. *See* Pl.'s Opp. (R.8) at 15, JA72. Even then, Rosen-Kellogg did not provide any facts supporting her conclusory assertion that other employees were similarly not monitored, including where they worked, whether they reported to the same management chain, and whether they worked remotely as part of a reasonable accommodation. *Id*. The complaint is devoid of any allegation that management harbored animus against individuals with disabilities, and lacks any meaningful allegations that management took its actions because Rosen-Kellogg is disabled, as opposed to other non-discriminatory reasons.

Yet even if Rosen-Kellogg had adequately alleged that other employees were not similarly monitored, her claim still falters. Rosen-

Kellogg did not identify any harm that flowed from the purported monitoring. *See* Am. Compl. ¶¶ 12, 21 (R.2), JA23, 27. The Supreme Court in *Muldrow* clarified the standard applicable to private and state and local government employers for assessing the existence of an adverse action under Title VII. 601 U.S. at 354 (discussing 42 U.S.C. § 2000e 2(a)(1)). In *Muldrow*, the Court rejected a reading requiring an employee to demonstrate that an alleged transfer resulted in "significant" harm to be actionable under the non-federal provisions of Title VII. *Id.* The Court reasoned that while an employee "must show some harm respecting an identifiable term or condition of employment," the employee need not show that harm caused "significant disadvantages[.]" *Id.* at 974 ("To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment. What the transferee does not have to show, according to the relevant text, is that the harm incurred was significant."). Notably, the Court's holding in *Muldrow* effectively displaced the decision rendered en banc by this Court in *Chambers*, 35 F.4th at 870. *See Muldrow*, 601 U.S. at 363-64 (Kavanaugh, J., concurring) (noting that the Court's standard of "some harm" differs from that described in *Chambers*). Because the

- 35 -

Rehabilitation Act incorporates by reference the standard under the ADA, which prohibits discrimination with respect to "other terms, conditions, and privileges of employment" 42 U.S.C. § 12112(a) (ADA); 29 U.S. Code § 791(f) (Rehabilitation Act), the standard established in *Muldrow* appears to control the Court's analysis here.

Rosen-Kellogg has not identified any such "term or condition" of employment nor explained how the Skype "monitoring" affected it. Such barebones allegations do not suffice under *Twombly* or *Iqbal*. This Court recognized in *Chambers* that not everything that happens in the workplace affects an employee's "terms, conditions, or privileges of employment." 35 F.4th at 875. Indeed, Rosen-Kellogg glosses over the fact that even if such monitoring occurred, supervisors are entitled to monitor their employees, particularly when they work from home remotely. Thus, bearing in mind the oft-repeated caution that Title VII is not a "general civility code" that makes actionable "the ordinary tribulations of the workplace," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), the District Court did not err in finding that "Skype monitoring" is not adverse, particularly where Rosen-Kellogg had not

pleaded any harm flowing from this action. *See* Nov. 15, 2023, Mem. Op. (R.12) at 19, JA115.

The only other actions Rosen-Kellogg identifies as "adverse" are the investigation into her business activities and her ultimate termination. Appellant's Br. at 25. She discusses neither of these events in the context of her discrimination claim, rather, she addresses them in the context of their purported temporal proximity to her protected activity.[4] *Id.* Any argument that these acts could support discrete discrimination claims are therefore forfeited. *See, e.g., Abdullah v. Obama*, 753 F.3d 193, 199 (D.C. Cir. 2014).

Even if Rosen-Kellogg had not forfeited these arguments, they lack merit. As to both the investigation and the termination,[5] Rosen-Kellogg

---

[4] Rosen-Kellogg states that an inference of "discrimination" can be drawn with respect to her claim regarding Skype monitoring. Appellant's Br. at 25. Later in the same section, she makes a distinction regarding claims of "retaliation" and "discrimination," indicating that Rosen-Kellogg understands the difference between the claims that she was pressing. Given Rosen-Kellogg's clear understanding, the Court need not assume that Rosen-Kellogg uses the terms discrimination and retaliation interchangeably.

[5] The United States argued that Rosen-Kellogg's discrimination claims pertaining to her proposed and effected termination failed not because they did not constitute adverse actions, but because she failed to plead sufficient facts to plausibly allege that these actions were taken

identifies no facts in her amended complaint to support a plausible inference that management initiated an investigation into her business activities or terminated her because of her disability. *See* Appellant's Br. at 25. The facts upon which Rosen-Kellogg now purports to rely are not found in her pleading; she pled them for the first time in opposition to a motion to dismiss. *Cf. Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("The purpose of a motion to dismiss is to assess the validity of the pleadings"). At most, Rosen-Kellogg argues that she was both "retaliated and discriminated against" when she was subjected to an investigation and then terminated, but Rosen-Kellogg fails to develop this argument. Rather, she mentions it "in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones," which does not suffice to raise an issue. *Al-Tamimi*, 916 F.3d at 6 (cleaned up).

---

because of her disability. Def.'s Mot. (R.6) at 15-16, JA51-52. The District Court agreed, *see* Nov. 15, 2023, Mem. Op. (R.12) at 20-21, JA116-17.

## C.    Rosen-Kellogg Failed to Plausibly Allege USCIS Retaliated Against Her.

Under the pleading standard of *Twombly* and *Iqbal*, to state a retaliation claim, as Rosen-Kellogg attempts to do, a complaint must allege sufficient facts to "plausibly establish [the] three elements" of such a claim. *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (citing *Iqbal*, 556 U.S. at 678); *see also Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020) (affirming the pleading-stage dismissal of a retaliation claim where the allegations "prevent[] the court from drawing a reasonable inference of causality").  Those elements are: "(1) that an employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two."  *Id.*; *see also Ho*, 106 F.4th at 51.

In the District Court, USCIS moved to dismiss Rosen-Kellogg's retaliation claims based on two threshold arguments: that Rosen-Kellogg failed to allege materially adverse actions with respect to her claims that USCIS "monitored" her attendance, and that co-workers "gossiped" and made false accusations against her, *see* Def.'s Mot. (R.16) at 17-18, JA53-54; and even if these claims (plus her proposed and actual termination)

were adverse, she lacked a causal connection to her protected activity, *id.* at 18-20, JA54-56. The District Court agreed. *See* Nov. 15, 2023, Mem. Op. (R.12) at 24-25, JA120-21. On appeal, Rosen-Kellogg does not address the District Court's dismissal of her claims for failure to allege a materially adverse action, forfeiting any such arguments. *See* Appellant's Br. at 24-26; *Al-Tamimi*, 916 F.3d at 6.

Rosen-Kellogg argues that USCIS retaliated against her when it initiated an investigation in January 2020 into the real-estate transactions she admits she conducted during work hours, which culminated in her termination in December 2021. Appellant's Br. at 24-25. These claims fail because Rosen-Kellogg does not plausibly allege that her management was aware of her protected activity at that time and, in any event, lacks a sufficient temporal connection from which to infer that any statutorily protected activity was the cause of her termination.

Rosen-Kellogg's complaint alleged that she engaged in protected activity at several points between 2018 and 2021, to include filing formal complaints on March 24, 2020 and December 2021. *See* Am. Compl. (R.2) ¶¶ 4, 10-12, 17-19, JA19-20, 22-23, 25-26. Now relying exclusively on her

informal contact with an EEO counselor that occurred in December 2019 (Appellant's Br. at 25-26), Rosen-Kellogg attempts to create an inference that the January 2020 investigation occurred because of her December 2019 activity.[6]  Appellant's Br. at 25-26.  She also contends that the investigation followed her complaints to management regarding her cell phone and a reasonable accommodation.  *Id*.  These facts are not found in Rosen-Kellogg's complaint.  *See generally* Am. Compl. (R.2).  While Rosen-Kellogg alleged that she "contacted an EEO counselor" in December 2019 (Am. Compl. ¶ 4 (R.2), JA19), she did not allege that such

---

[6]    In a supplemental filing, Rosen-Kellogg later appended certain portions of the report of investigation, which included management's response to Rosen-Kellogg's allegations as to the timing of the investigation into her real-estate activities.  Management indicated that the investigation was initiated in October 2019, long before Rosen-Kellogg's December 2019 contact with an EEO counselor.  *See* Report of Investigation (R.14-2) at 9, JA251.  Rosen-Kellogg contends that the investigation began in January 2020 because that is when she was contacted, but her own evidentiary support contradicts that notion.  *Id*. (R.14-2) at 7, JA249 (noting that she received an email from the Office of Investigations on January 23, 2020); *but see id*. at 9, JA251 (Mr. Epenscheid stating that he was notified of an investigation on October 18, 2019).  *Cf. Henthorn*, 29 F.3d at 688 ("To require that trial courts accept as true factual allegations made in legal memoranda, which form no part of the official record, when those allegations directly contradict the facts set forth in the complaint would be to stretch Rule 12(b)(6) far beyond even the generous pleading standards that we apply to *pro se* plaintiffs.").

activity subsequently caused an investigation into her real-estate business. The complaint lacks any plausible allegation that would support an inference that the December 2019 activity and management's actions in early 2020 are connected, particularly where Rosen-Kellogg does not plead that she informed management of her contact with an EEO counselor or that her management otherwise had reason to know of such contact. [7] She therefore fails to allege facts plausibly showing that her managers "had knowledge of her protected activity, and that the adverse personnel action took place shortly after that activity[,]" *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). Simply, Rosen-Kellogg did not supply sufficient facts to connect those dots. *See Iqbal*, 556 U.S. at 678.

Similarly, while Rosen-Kellogg alleged that she complained that her managers were using Skype as "an attendance tool for a disabled person" between 2018 and 2020, the dates of when those complaints purportedly occurred were not specified, nor did she specify to whom she

---

[7]    Rosen-Kellogg raised these facts for the first time in her opposition to USCIS's motion to dismiss. *See* Pl.'s Opp. (R.8) at 10, 15, JA67, 72. They are not found on the face of her pleading. *See Henthorn*, 29 F.3d at 688.

made those complaints.  *Id.* ¶ 10.  This late stage of the proceedings is not the place for Rosen-Kellogg to write facts into her complaint that do not otherwise appear.

As to her termination, there is no plausible allegation that it was caused by Rosen-Kellogg's protected activity, and there exists too wide a time gap between events to infer causation from temporal proximity.  To support an inference of causation, the temporal proximity between the protected activity and the adverse action "must be 'very close.'"  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).  Although this Court has not adopted a "bright line rule," it has observed that the Supreme Court in *Breeden* cited "approvingly cases where three- and four-month intervals were found insufficient to infer causality between the protected activity and the adverse employment action" and that this Court "has often analyzed temporal proximity in terms of months—not years."  *Pueschel*, 955 F.3d at 163; *see also Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) ("Although the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may,

standing alone, be too lengthy to raise an inference of causation, neither the Supreme Court nor this court has established a bright-line three-month rule.").

Rosen-Kellogg's proposed and ultimate termination did not closely follow any protected activity that she identified to the District Court. The complaint alleges that Rosen-Kellogg filed administrative complaints alleging discrimination and retaliation in March 2020, and December 2021, Am. Compl. ¶ 4, JA19-20, and that she testified as a witness on behalf of a co-worker in 2018, *id.* ¶ 10. Rosen-Kellogg also claimed that she complained of management using Skype as an "attendance tool" between April 2018 and February 2020. *Id.* Her response to the defendant's motion to dismiss acknowledged some dates. Pl.'s Opp. (R.8), JA 62, 64. But Rosen-Kellogg's termination was not proposed until May 2021,[8] and decided in December 2021. Am. Compl. ¶¶ 17, 18. Thus, the

---

[8]    Marlin Ruhl, a section chief, issued the proposed termination to Rosen-Kellogg. JA66. Rosen-Kellogg does not allege that she previously filed any complaints concerning Ruhl. *See generally* Am. Compl. (R.2). Rosen-Kellogg does allege that the "official" who decided her termination in December 2021 "had been involved in her disability discrimination claim," Am. Compl. ¶ 18 (R.2) at 9, JA26, but the latest of any such activity preceded December 2021 by more than a year, negating an inference of proximity.

termination actions followed her most recent complaint by fourteen months (for the proposal) and twenty-one months (for the decision)—well over the three-to-four-month mark where this Court has been unwilling to infer causation. *See Hamilton*, 666 F.3d at 1357–58; *Pueschel*, 955 F.3d at 167 (granting motion to dismiss where there was no temporal proximity and "no additional factual allegations support[ing] causation").

Rosen-Kellogg does not rely on other factual allegations aside from temporal proximity to suggest that the individuals involved in her termination acted with retaliatory animus. She states only that the individuals in her management chain were aware of her disabilities and requests for reasonable accommodation. Appellant's Br. at 26. But knowledge on its own does not translate to animus. *See e.g., Vickers v. Powell*, 493 F.3d 186, 196 (D.C. Cir. 2007) (finding evidence insufficient to infer retaliation when decisionmaker in adverse action knew of plaintiff's complaints but did not "participate in any of the alleged incidents that make up [plaintiff's] hostile work environment claim"); *Gilbert v. Napolitano*, 670 F.3d 258, 263 (D.C. Cir. 2012) (similar). For example, Marlin Ruhl, a section chief, issued the proposed termination to Rosen-Kellogg. Pl.'s Opp. (R.8) at 9, JA66.

Rosen-Kellogg does not allege that Ruhl was involved in her underlying EEO complaints. *See* Am. Compl. ¶ 17 (R.2), JA25-26. Although Rosen-Kellogg does allege that the "official" who decided her termination in December 2021 "had been involved in her disability discrimination claim," Am. Compl. ¶ 18 (R.2) at 9, JA26, the latest of any such activity preceded December 2021 by more than a year, negating an inference of proximity.

In sum, based on the totality of the allegations and the entire record below, Rosen-Kellogg has not plausibly pleaded that an investigation into her real-estate activities and her termination were caused by retaliation, either through temporal proximity or otherwise.

## II. The District Court Acted Within Its Discretion in Denying Rosen-Kellogg's Request Raised Via Footnote to Amend Her Complaint.

### A. Rosen-Kellogg Failed to Move for Leave to Amend Her Complaint.

Rosen-Kellogg's argument that the District Court abused its discretion in denying her request to amend her complaint is without merit. The District Court acted comfortably within its discretion in rejecting Rosen-Kellogg's request—asserted via footnote in her opposition to the motion to dismiss—to permit her to move for leave to

file an amended complaint. *Hutchins v. District of Columbia,* 188 F.3d 531, 539-40 n.3 (D.C. Cir. 1999) (this court "need not consider cursory arguments made only in a footnote."). When determining whether the District Court abused its discretion, this Court does "not substitute [its] judgment for that of the trial court." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1053 (D.C. Cir. 2021) (cleaned up). "Abuse of discretion is a particularly high bar where the court is simply exercising its judgment about whether to relieve a party from an unexcused (*i.e.*, no good cause) failure to comply with the Rules." *Morrissey v. Mayorkas*, 17 F.4th 1150, 1157 (D.C. Cir. 2021) (cleaned up).

Contrary to her assertion, Rosen-Kellogg did not properly move for leave to file an amended complaint. *See* Pl.'s Supp. Mem. (R.14) at 15, JA131-38. "[A] bare request in an opposition to a motion to dismiss— without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Belizan v. Hershon,* 434 F.3d 579, 582 (D.C. Cir. 2006); *see also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012). This Court has "repeatedly stressed the importance of navigating the

procedural requirements for amending under Rule 15." *Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014) (citing *Rollins*, *Belizan*, and *Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

This Court has not hesitated to reach a similar conclusion in an analogous case. In *Rollins*, 703 F.3d at 131, the plaintiff responded to a motion to dismiss with an opposition, where she requested leave to amend as "an alternative argument." Here too, Rosen-Kellogg requested leave to amend via opposition to a motion to dismiss, though unlike *Rollins*, she did not advance it as an alternative argument, but as a passing request in a footnote. Pl.'s Opp. (R.8) at 2, JA59. This Court rejected Rollins' argument that such a denial constituted an abuse of discretion, noting that the District Court's Local Civil Rule 15.1 requires that "a motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended," and that Rollins' request neither included a proposed amended complaint "nor otherwise indicated that she would be able to plead sufficient facts to state a plausible claim for relief." *Id.* Like Rollins, Rosen-Kellogg did not include a copy of her proposed amended complaint with her opposition to the

motion to dismiss. Thus, "it could hardly have been an abuse of discretion" for the District Court to deny her request to amend. *Rollins*, 703 F.3d at 131 (quoting *Hines,* 995 F.2d at 299); *see also Schmidt*, 749 F.3d at 1069 (holding that a filing was procedurally deficient for failing to attach a copy of the proposed amended pleading and that the district court "rightly disallowed" the filing of an amended complaint, which, absent consent or leave of court, was "without legal effect").

The District Court was also well within its discretion in concluding that Rosen-Kellogg had opportunity to plead facts to support her claims. In opposing USCIS's motion to dismiss, Rosen-Kellogg asserted new facts not previously alleged in the complaint but known to Rosen-Kellogg and her counsel at the time because they were contained within the report of investigation in their possession. *See* Pl.'s Supp. Mem. (R.14), JA134 ("Counsel for Plaintiff does not dispute that he had access to the 320-page report of investigation [] and the information therein. It was therefore possible for him to file a much more detailed complaint."). The district court, while noting that Rosen-Kellogg was not proceeding *pro se*, afforded her the opportunity to file a supplemental memorandum explaining why she failed to include these operative facts in her pleading.

*See* Nov. 15, 2023, Mem. Op. (R.2), JA125-27.  The district court specified that it wanted to know when Rosen-Kellogg became aware of the reports of investigation and "any other potentially mitigating reasons for [her] error."  *Id.*, JA127.  Rosen-Kellogg's only response was that her counsel believed that her pleading complied with Rule 8's requirement to provide a "short and plain" statement of her case.  Pl.'s Supp. Mem. (R.14) at 4, JA134.  The district court was not persuaded, noting that Rosen-Kellogg could have included the facts in her original pleading, or formally moved for leave to do so under Rule 15(a)(2).  April 4, 2024, Order (R.17), JA221. She did neither.

Indeed, the additional facts that Rosen-Kellogg contends support her retaliation claim, Appellant's Br. at 29-31, could have been included in her original pleading.[9]  For example, Rosen-Kellogg asserts that she had an "active pending EEO complaint" against McAllum, the deciding official on Rosen-Kellogg's termination at the time of the decision,

---

[9]    Many of the facts Rosen-Kellogg relies upon do not relate to her retaliation claims, but rather to her failure to accommodate claim. Appellant's Br. at 29-31.  The District Court had already dismissed Counts I and II from the complaint when Rosen-Kellogg submitted her supplemental filing, and these arguments were not properly within the scope of the issues the supplemental brief was intended to address.

rendering her claim facially plausible. Appellant's Br. at 29. Nothing prevented Rosen-Kellogg from asserting as much in her complaint, but she did not do so. Notably, she also did not specify on what grounds she would seek amendment other than to add additional facts when she requested to do so in opposing USCIS's motion to dismiss. *See* Pl.'s Opp. (R.8) at 2, JA59.

## B.    Rosen-Kellogg's Amendments Would Have Been Futile.

Even if the District Court had regarded Rosen-Kellogg's footnote request as a timely motion for leave to amend, any such amendment would have been futile. *Givens v. Bowser*, 111 F.4th 117, 123 (D.C. Cir. 2024); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rosen-Kellogg appended various materials to her supplemental filing, including items related to claims that the District Court had already dismissed. *See* Pl.'s Supp. Mem. (R.14), JA131-38. This was improper for two reasons. First, her supplemental filing was not the appropriate place to raise new arguments or provide additional support for her pleading; the appropriate vehicle would have been a motion for leave to file an amended complaint, which Rosen-Kellogg did not do. Second, the District Court was not required to sort through Rosen-

Kellogg's exhibits to determine whether her claims were facially plausible. *See e.g., Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016) ("judges are not like pigs, hunting for truffles buried in briefs or the record.").

The materials Rosen-Kellogg appended purported to support her contention that McAllum was aware of her EEO activity. Pl.'s Supp. Mem. (R.14) at 4-5, JA134-35. As USCIS noted in its response to Rosen-Kellogg's supplemental filing (Def.'s Supp. (R.16) at 6, JA211), however, the exhibit upon which Rosen-Kellogg relied (a counselor's report) demonstrated only that on February 28, 2020, Rosen-Kellogg filed an amended administrative complaint and that a mediation occurred on March 5, 2020, with McAllum as the designated management official. Pl.'s Supp. Mem. Ex. 3 (R.14-3), JA190. The counselor's report does not state precisely when prior to March 2020 McAllum was informed of Rosen-Kellogg's contact with an EEO counselor, and Rosen-Kellogg does not allege that she herself told McAllum prior to the mediation. *Id*.; *see also* Am. Compl. ¶ 11 (R.2), JA22 (noting that McAllum "participated in the pre-complaint mediation of plaintiff's claims"). Indeed, Rosen-Kellogg testified during the administrative proceedings that she was not

aware of when McAllum became aware of her protected activity. *See* Pl.'s Supp. Mem. Ex. 2 (R.14-2) at 6, JA174 ("She indicates Ms. McAllum became aware of this instant complaint on an *unknown* date, since she [] participated in the mediation for this instant complaint.") (emphasis added). Even if McAllum became aware of the protected activity in advance of the March 2020 mediation, there is no allegation that she became aware before Rosen-Kellogg was informed in January 2020 of the formal investigation into her real-estate activities.

In any event, Rosen-Kellogg concedes that the investigation was not initiated by McAllum, it was initiated by the Office of Investigations, so when McAllum became aware is not relevant for establishing an inference of causation. *See* Pl.'s Opp. (R.8) at 8-9, JA65-66. Moreover, in support of her supplemental filing, Rosen-Kellogg appended a copy of an administrative declaration she provided in August 2020 during the EEO investigation of her claims. Pl.'s Supp. Mem. Ex. 4 (R.14-4), JA191-205. Rosen-Kellogg indicated in her prior sworn declaration that she believed that Corcoran (not McAllum) filed the complaint regarding Rosen-Kellogg's outside business activities (*id*. at 4-5, JA194-195), and Rosen-Kellogg engaged in several conversations with Jared Epenschied about

her personal business ventures because Epenschied (to whom she reported between August 2018 and December 2019) had "received numerous complaints" regarding Rosen-Kellogg's personal business. *Id.* at 4, JA195 ("I had already been counseled on the same activity that was the subject of the investigation. Mr. Espenschied had received numerous complaints from my coworkers that I had been engaged in real estate activities while I was supposed to be working. I have had my real estate license since 2016."). Thus, Rosen-Kellogg's allegation that McAllum was the link between her protected activity and the initiation of the investigation was unsupported by her exhibits, rendering amendment futile.

Although the District Court dismissed Rosen-Kellogg's failure to accommodate claim, Rosen-Kellogg's supplemental filing went outside the bounds of the District Court's order, attempting to bolster her already-dismissed claims with new facts. This notwithstanding that the District Court had already noted that Rosen-Kellogg's additional facts would not change the outcome. *See* Nov. 14, 2023, Mem. Op. (R.12) at 32 n.4, JA 128. The District Court was correct.

As to the proposed amendments to support a failure to accommodate claim, Rosen-Kellogg argued that she did not "need a cell phone because she suffers from anxiety, depression, etc. She needs a cell phone because her disabilities make it necessary for her to work from home and she needs a phone to work from home."  Pl.'s Opp. (R.8) at 14, JA71.  Indeed, Rosen-Kellogg argued that the use of a cell phone was necessary because she was otherwise "forced to engage in email exchanges that were sometimes not productive," *id*. at 5, JA62, that a cell phone was useful to list an "out of office" on her email, *id.*, and that sometimes it was a "cumbersome" process of logging onto the agency's system in the absence of a cell phone, *id.* at 5-6, JA62-63.  These inconveniences did not establish that Rosen-Kellogg could not perform the essential functions of her position without a cell phone.  *See e.g., Hill v. Assocs. for Renewal in Ed.*, 897 F.3d 232 (D.C. Cir. 2018) ("[T]here must be a causal connection between the major life activity that is limited and the accommodation sought.") (quoting *Nuzum v. Ozark Auto. Distribs., Inc.*, 432 F.3d 839, 848 (8th Cir. 2005)).

Moreover, Rosen-Kellogg's supporting materials demonstrated that she did not want the cell phone in the first place.  *See* Pl.'s Supp. Mem.

Ex. 4 (R.14-4) at 9, JA199 ("I did not want the cell phone originally, but they gave it to me anyway."). This Court has recognized that an employer is not required to "provide an employee that accommodation she requests or prefers, the employer need only provide some reasonable accommodation." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998); *Ali v. Regan*, 111 F.4th 1264, 1277 (D.C. Cir. 2024). Thus, Rosen-Kellogg's amendments were futile.[10]

## III. The District Court Acted Within its Discretion in Denying Rosen-Kellogg's Motion to Alter or Amend the Judgment When Rosen-Kellogg Raised New Arguments and Failed to Demonstrate the Need to Prevent a Manifest Injustice.

Federal Rule of Civil Procedure 59(e) provides a limited exception to the rule that judgments are to remain final. *See Derrington–Bey v. Dist. of Colum. Dep't of Corrs.*, 39 F.3d 1224, 1225 (D.C. Cir. 1994). Under Rule 59(e), the court may grant a motion like Rosen-Kellogg's, to amend or alter a judgment, under three circumstances only: (1) if there is an "intervening change of controlling law"; (2) if new evidence becomes

---

[10]    Rosen-Kellogg acknowledged that USCIS stated that it removed cell phones from multiple individuals (not just Rosen-Kellogg), due to financial issues. *See* Pl.'s Opp. (R.8) at 6, JA63. The materials Rosen-Kellogg appended in support of her proposed amended complaint supported this conclusion, too. *See* Report of Investigation (R.19-1) at 13, JA255.

available; or (3) if the judgment should be amended in order to "correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The District Court was well within its discretion to deny Rosen-Kellogg's motion, as "reconsideration or amendment of a judgment [under Rule 59(e) is. . . an extraordinary measure." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018).

In the District Court, Rosen-Kellogg pressed two main arguments for reconsideration, one of which was raised for the first time only then: first, that she had moved the court for leave to file an amended complaint but was not given an opportunity to do so, and two, that she had not had ample opportunity to amend her complaint because the "amended complaint" listed on the docket was simply a duplicate of the original complaint and mislabeled as amended due to a clerical error. Appellant's Br. at 35. Neither argument has merit.

First, because Rosen-Kellogg did not formally move the District Court for leave to file an amended complaint, the District Court did not err when it concluded that Rosen-Kellogg's request via opposition did not constitute a motion to amend her complaint. *See supra* § II; *see also*

JA293. She made no argument that the District Court refusal amounted to "manifest injustice," nor does she argue as much now. *See* Appellant's Br. at 34-35.

Second, as to her argument of a clerical error, that fails for a different reason. Rosen-Kellogg's motion for reconsideration was the first time that she raised this argument notwithstanding that she could have done so in the supplemental brief requested by the District Court after its initial decision. *See* Pl.'s Mot. Recon. (R.19) at 4, JA227-28. Her supplemental brief was silent on this topic. Pl.'s Supp. Mem. (R.14), JA131-38. It was not until almost six months after the issuance of the Court's initial decision and almost five months after Rosen-Kellogg's supplemental filing that she first notified the District Court of this purported error. But it is well established that a motion under Rule 59(e) is aimed at "reconsideration, not initial consideration." *District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010). It does not permit a party, such as Rosen-Kellogg, to "raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping v. Baker*, 554 U.S. 471, 486 n.5 (2008); *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012). This is even more

salient here because Rosen-Kellogg was represented by the same counsel at the time that the complaint was filed and on the same day when it was "amended."   Surely Rosen-Kellogg could have realized that she had not amended her complaint prior to the litigation of her motion for reconsideration, which occurred almost eighteen months later. Notwithstanding her clear failure to raise this argument earlier, the District Court considered it, finding that Rosen-Kellogg could have included these new facts in her original complaint, or formally moved the District Court.  *See* June 6, 2024, Order (R.23), JA294.  She did not do so. Thus, there was no need to "correct clear error or prevent manifest injustice," *Leidos*, 881 F.3d at 218.  To satisfy the "manifest injustice" standard, Rosen-Kellogg must demonstrate "at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law."  *Id*.  But Rosen-Kellogg makes no attempts to meet that standard.

The remainder of Rosen-Kellogg's argument rests on the mistaken assertion that the District Court erred in failing to consider new facts that were not found on the face of the pleadings.  *See* Appellant's Br. at 36-41.  Rosen-Kellogg did not introduce these new facts in her motion for

reconsideration; instead, she argued them only on reply. Because Rosen-Kellogg's initial motion did not set forth any substantive argument regarding the new facts, the District Court's failure to consider them was not a manifest injustice. A summary assertion in the initial brief, made without argument or citations, does not suffice to preserve the more fine-grained argument. *Al-Tamimi*, 916 F.3d at 6; *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace."). By waiting until the reply to introduce this argument, Rosen-Kellogg deprived the United States of a full opportunity to rebut her arguments, and this Court should decline to consider them now on the first instance.

Rosen-Kellogg's reliance on *Singletary v. District of Columbia*, 351 F.3d 519, 524 (D.C. Cir. 2003) is inapposite. In *Singletary*, this Court concluded that the District Court erred when it failed to consider protected activity that occurred "long after" the original protected activity, which was temporally close to the action at issue. *Id.* at 524-525. Rosen-Kellogg contends that she was "actively engaged" in protected activity from December 2019 until the date of her termination

on December 30, 2021, but that fact was not found in her complaint. *See generally* Am. Compl. Because Rosen-Kellogg failed in certain instances to specify dates upon which she engaged in protected activity and who was aware of such activity and when, she failed to state a plausible claim for relief.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be affirmed.

Respectfully submitted,

EDWARD R. MARTIN, JR.
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

*/s/ Brenda González Horowitz*
BRENDA GONZÁLEZ HOROWITZ
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 2522512

*Attorneys for the United States of America*

Dated: January 31, 2025

## CERTIFICATE OF COMPLIANCE
(Fed. R. App. P. 32(a)(7)(B))

This brief is prepared using 14-point Century Schoolbook, a proportionally spaced font and—omitting those items described in Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1)—contains 11, 921 words as counted by Microsoft Word 365.

*/s/ Brenda González Horowitz*
BRENDA GONZÁLEZ
HOROWITZ
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on this 31st day of January, 2025, I caused a true and correct copy of the above brief to be served upon all counsel of record by filing the brief using the Court's ECF system.

*/s/ Brenda González Horowitz*
BRENDA GONZÁLEZ
HOROWITZ
Assistant United States Attorney

- 62 -

# STATUTORY AND REGULATORY ADDENDUM

## 42 U.S.C. § 12111

**(8) Qualified Individual.**

The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

## 29 CFR § 1630.2

**(o) Reasonable accommodation.**

(1) The term reasonable accommodation means:

(i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

(ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

(iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

**29 C.F.R. § 1630.2(m)**

The term "qualified," with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position. *See* § 1630.3 for exceptions to this definition.

## 29 C.F.R. § 1630.2(n)(3)

## Essential Functions

Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.